# Court of Appeals
## Tenth Appellate District of Texas

10-25-00210-CR
10-25-00211-CR
10-25-00212-CR

Kirk Glenn Reiber,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
443rd District Court of Ellis County, Texas
Senior Judge Cindy Ermatinger, presiding
Trial Court Cause Nos. 48372CR, 48373CR, 48374CR

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a jury trial, Kirk Glenn Reiber was convicted of two counts of unauthorized use of a vehicle and one count of aggravated assault with a deadly weapon.[1] Finding two felony enhancement paragraphs to be true in each case, the trial court assessed punishment at twenty years in prison on

---

[1] Each charge was indicted in a separate cause number, but all three cases were tried together.

each unauthorized use of a motor vehicle conviction and at Life in prison on the aggravated assault with a deadly weapon conviction. Reiber phrases his sole issue on appeal as a challenge to the legal sufficiency of the evidence supporting the jury's rejection of his insanity defense; however, he also discusses the standard of review applicable to a factual sufficiency challenge and argues that acquittal is appropriate pursuant to that standard. We address both sufficiency challenges and affirm.

STANDARDS OF REVIEW AND RELEVANT LAW

A defendant cannot be convicted of a criminal offense if he is legally insane at the time of its commission. TEX. PENAL CODE ANN. § 8.01(a). The question is whether, "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." *Id.* In the context of an insanity defense, the term "wrong" refers to a defendant's understanding of the illegality of his actions. *See Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008).

For legal sufficiency challenges to a jury's rejection of an affirmative defense, we first search the record for any evidence favorable to the jury's finding, disregarding all contrary evidence unless a reasonable factfinder could not disregard it. *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013). If no evidence supports the finding, we then determine whether the contrary

proposition was established as a matter of law. *Id.* at 669-70. A defendant is entitled to an acquittal only if the evidence conclusively establishes the affirmative defense and no reasonable factfinder was free to think otherwise. *Id.* at 670.

For factual sufficiency challenges to the jury's rejection of an affirmative defense, we view the evidence in a neutral light, but we "may not usurp the function of the jury by substituting [our] judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Id.* at 671. We may sustain a defendant's claim of factual insufficiency only if the verdict is so against the great weight of the evidence as to be manifestly unjust, conscious-shocking, or clearly biased. *Id.*

EVIDENCE PRESENTED AT TRIAL

The State's first witness at trial was the owner of the 24-Hour Mobile Truck & Trailer Repair shop. The owner testified that on February 9, 2022, Reiber entered the shop and asked the owner to repair a flat tire on his bicycle. The owner informed Reiber that he did not fix bicycles and had no way of repairing the tire. Reiber left the shop, but he returned approximately thirty minutes later "demanding" that the owner fix the bicycle tire. The owner told Reiber to leave, and Reiber complied. Later that evening, when the owner walked out of the shop, he found that his service truck was missing. He also

observed a bicycle that was left on the property. The owner reported the theft of the service truck to the police department.

The next day, a customer brought a large car hauling trailer to the shop for repair. In order for the customer to back the trailer onto the property, the owner and his son had to stop traffic on the service road. The owner's son informed him that the stolen service truck was driving toward them on the service road. The owner confronted Reiber, who was driving, about taking the truck. The owner said Reiber "laughed, snickered" at him before complying with his demand to exit the truck. Reiber asked for his bicycle, which had already been removed from the property by the police. As the owner moved the stolen service truck from the service road into the parking lot, he observed Reiber walking toward the customer's car hauling trailer. The owner told his son to call the police.

The owner testified that after he pulled his service truck into the parking lot, he heard "commotion and arguing" and observed Reiber inside of the customer's truck. His son was standing on the truck's running boards with the door open, fighting with Reiber. His wife was standing nearby. The owner described hearing the tires squeal and observing the truck move backward at a high rate of speed when his wife was hit by the open car door and dragged for several feet down the street. He testified that he ran to the truck and a

struggle ensued, with the participants starting and stopping the truck and shifting it in and out of gear. The owner eventually restrained Reiber and kept him there until police arrived.

The State's second witness was the shop owner's wife. She testified that the day after the service truck was stolen, she called 9-1-1 because the person who stole the truck "was back and trying to steal another one." She observed Reiber sitting in the driver's seat of the customer's car hauler and testified that her son was fighting with Reiber to keep him from getting the truck in gear while Reiber was "just laughing." She described being hit and dragged by the door of the truck, which caused her to sustain a concussion and a labrum tear in her hip.

The State's third witness was the customer who brought in the car hauler for repair. The customer testified that Reiber walked up to his truck and told him that he worked for the shop. He described Reiber as wearing a "service shirt" that made him appear as if he worked for a repair shop. The customer exited the truck, and Reiber, claiming he would back the trailer into the property, got inside the truck. The customer then observed the owner's son waving at him and saying Reiber did not work for the shop. The customer told Reiber to exit the truck, and Reiber refused. The customer testified that after

Reiber learned that 9-1-1 was being called, he put the truck in reverse and "floored it."

The State next called the owner's son. As to the initial interaction between his father and Reiber, he testified to substantially the same facts as his father. He described Reiber as "laughing at us." As to his interaction with Reiber in the customer's truck, he explained that he was trying to turn the vehicle off while Reiber was trying to turn it on and put it in gear. Reiber eventually "jerked it down into reverse" and "floored" it. The owner's son said his mother was dragged twenty to thirty yards before he was able to stop the truck. He described Reiber continuing to fight to get the truck back into gear before his father was able to restrain him. The owner's son also testified to the condition of the stolen service truck upon its return. He explained that it "looks like somebody tried to pry the back doors open."

The State's final witness in its case-in-chief was one of the responding officers to the scene. He testified that he removed Reiber from the customer's truck and placed him in handcuffs. Though Reiber indicated that he did not want to speak about the incident, he stated that he was there to retrieve his bicycle. When asked if he was ever concerned for Reiber's mental health at the scene, the officer responded, "Not once." He testified that Reiber never seemed confused, and characterized his attitude as sarcastic and nonchalant.

The defense called Reiber's brother as its first witness. The brother testified that Reiber sustained a head injury from a serious car accident in 2016. Approximately one year later, the brother started noticing that Reiber was becoming paranoid and delusional. The brother testified that these symptoms escalated a few months prior to the underlying incident. About one month before the incident, Reiber was admitted to the hospital on two separate occasions, once for twenty-four hours because he was not "in his right mind" and once on a seventy-two-hour mental health hold. The week before the incident, the brother again sought help for Reiber's mental health; however, after speaking with a doctor, Reiber was released from the hospital. The brother also testified that in Reiber's phone calls from the jail, he seemed confused about why he was there. Reiber told the brother that someone at the shop started the service truck and left it running, which made him believe he could use it to go buy parts to fix his bicycle. Reiber said he drove the truck to Walmart and purchased a new tube, bicycle tire, and air pump.

The defense also called an expert psychologist who assessed Reiber for both competency and insanity in November of 2023. The expert witness testified that she reviewed approximately fourteen or fifteen pages of medical records from the jail, informally spoke with some of the jail medical staff, and interviewed Reiber. She explained that the jail medical records show that

Reiber was placed on an anti-psychotic medication after a few months in custody, which was discontinued in the following year. Reiber told the expert that someone at the shop gave him the keys to the vehicle so that he could go purchase supplies to fix his bicycle. He claimed that he went to Walmart, purchased a patch and air pump, and returned the truck to the shop. He further claimed that while he was working on his bicycle, one of the employees told him that another vehicle needed to be backed up, so he offered to help. Reiber told the expert that he was confused when people started threatening to call police and fighting with him to get him out of the truck. The expert diagnosed Reiber with unspecified depressive disorder with psychotic features and cannabis use disorder, severe. Ultimately, she concluded that Reiber was competent to stand trial; however, he did not understand his actions were wrong at the time of the offense as a result of his mental health diagnosis and was legally insane at the time of the offense.

In rebuttal, the State called the law enforcement officer who searched Reiber's backpack incident to arrest. The officer testified that he did not locate any type of tire repair kit or receipt from Walmart in the backpack.

ANALYSIS

Reiber emphasizes on appeal that the State did not present any evidence to rebut his evidence of insanity. The State, however, was not required to do

so.[2] *Dashield v. State*, 110 S.W.3d 111, 115 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Because insanity is an affirmative defense, the defendant bears both the burden of proof and the burden of persuasion. *See* TEX. PENAL CODE ANN. §§ 2.04(d), 8.01. The defendant must prove insanity by a preponderance of the evidence, and the State is under no obligation to present any direct rebuttal evidence. *See Graham v. State*, 566 S.W.2d 941, 950 (Tex. Crim. App. 1978).

Furthermore, the issue of insanity is not a purely medical question; it invokes legal and ethical considerations that only the jury can resolve. *Bigby v. State*, 892 S.W.2d 864, 877-78 (Tex. Crim. App. 1994). Thus, expert medical testimony, even if uncontradicted, does not establish a defendant's insanity as a matter of law. *Id.* A medical expert's opinion that a defendant did not know his conduct was wrong does not bind the jury. *Dashield*, 110 S.W.3d at 115. The jury may reject such expert opinion testimony in whole or in part, weigh it against lay testimony and circumstantial evidence, and determine for itself whether the defendant satisfied the legal standard for insanity. *See id.*

As to Reiber's legal insufficiency claim, our first step is to look for more than a scintilla of evidence supporting the jury's rejection of his insanity

---

[2] There exists an exception to this general rule when the defendant has previously been adjudicated insane and the adjudication has not been vacated. *Riley v. State*, 830 S.W.2d 584, 585 (Tex. Crim. App. 1992). Neither party contends, and the record does not reflect, that this exception applies in this case.

defense. *Matlock*, 392 S.W.3d at 669. We find that there is at least some evidence in the record that reasonably supports a finding that Reiber was aware that his conduct was illegal at the time of the offenses. For example, testimony that Reiber attempted to flee when he learned that law enforcement was contacted may indicate knowledge of illegal conduct. *See Graham*, 566 S.W.2d at 951. Additionally, the evidence that it appeared that Reiber "tried to pry the back doors [of the service truck] open" reasonably suggests that Reiber was aware he did not have permission to use the service truck. We overrule Reiber's legal sufficiency challenge.

As to Reiber's factual sufficiency claim, we find that the verdict is not so much against the great weight of the evidence as to be manifestly unjust. In addition to the aforementioned evidence, the jury also reasonably could have determined that Reiber's impersonation of a shop worker was an intentionally deceitful ploy to gain access to the car hauler, not a result of confusion or delusion due to his mental defect. As the State argues, the jury also could have credited the testimony of the law enforcement officer "who dealt with [Reiber] and saw his demeanor and evaluated his actions on scene," over the defense expert's testimony who did not evaluate Reiber until well over a year later. We overrule Reiber's factual sufficiency challenge.

## Conclusion

Having overruled Reiber's sole issue in each appeal, we affirm the trial court's judgments.

_____
STEVE SMITH
Justice

OPINION DELIVERED and FILED:  July 9, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Do not publish
CRPM

